E. H. DUDLEY ET AL. vs. MINNIE DAVIS HULL.

Third Judicial District, Bridgeport, October Term, 1926.

WHEELER, C. J., CURTIS, MALTBIE, HAINES and ELLS, Js.

Although a motion or petition for a new trial is merely an ancillary
  proceeding, it is to be determined solely upon its own issues
  without regard to the questions raised by an appeal from the
  judgment sought to be relieved against.

Claimed errors in the trial of an action, and in the denial of a mo-
  tion for a new trial, may be included in one appeal.

Section 5850 of the General Statutes provides that new trials may
  be granted "for mispleading, the discovery of new evidence, want
  of actual notice of the suit to any defendant, or of a reasonable
  opportunity to appear and defend, when a just defense in whole
  or part existed, or for other reasonable cause, according to the
  usual rules in such cases." *Held* that the phrase "for other
  reasonable cause" was not restricted to causes of the same gen-
  eral character as those particularly enumerated, but that it
  was intended as an express confirmation of the inherent power
  of a court of equity to grant a new trial in any case of fraud,
  accident or mistake where the petitioner has been deprived
  of some right or privilege that the law intended him to have
  and where a probable failure of justice is indicated.

A motion for a new trial must show that substantial justice was
  not or may not have been done; and if based upon newly-
  discovered evidence, it must appear that the result would
  thereby be changed.

If the death of the official stenographer prevents an appellant from
  securing a transcript of the evidence and thus deprives him of
  a fair opportunity of pursuing an appeal based upon claimed
  corrections of the finding, he will, in an appropriate case, have
  "reasonable cause" for a new trial within the meaning of § 5850;
  but where, as in the present case, neither the allegations of his
  motion nor the facts found indicate the importance or effect
  of the corrections desired, this court will sustain the action of
  the trial court in denying the motion.

A letter from one attorney to another, containing statements alleged
  to have been made by the writer's client, is hearsay and in-
  admissible unless it appears that the communication was au-
  thorized or subsequently ratified by the client.

In an action by a husband to set aside a deed from his deceased
  wife to her daughter, the testimony of a physician that when
  the wife was in a hospital, several years before the conveyance,

Dudley *v.* Hull.

and was discussing the terms of her will, which was being prepared by the husband, there was an understanding that the property in question should go to the daughter after the husband's death, was admissible to prove that, in making the subsequent conveyance, she was carrying out this understanding.

Evidence concerning the assets and liabilities of the wife's estate was inadmissible to show that the conveyance was fraudulent as to creditors, or that the estate was bankrupt, but was admissible, as one of the circumstances surrounding the transaction, to show the improbability that the wife, who was in her last illness, would divest herself of property needed to pay her funeral and other expenses.

A mistaken ruling on evidence is not reversible error unless it was material to the conclusion reached by the trial court.

Argued November 3d, 1926—decided March 5th, 1927.

ACTION to set aside a conveyance of real estate alleged to have been procured through fraud and undue influence and while the grantor was mentally incompetent, brought to the Superior Court in New Haven County and tried to the court, *Hinman, J.;* judgment for the defendant, after which the plaintiffs filed a motion for a new trial, which was denied by the court (*Dickenson, J.*), and from this ruling and from the judgment, the plaintiffs appealed. *No error.*

On January 26th, 1914, just before he died, William Davis and his wife, Annie Davis, owned jointly the farm in controversy, and on this day Mr. Davis conveyed by quitclaim deed his interest in these premises to Mrs. Davis expressing a wish and expectation that the property, upon Mrs. Davis's death, should go to their only surviving daughter, the defendant. The plaintiff Isabella Conklin is a granddaughter of Mr. and Mrs. Davis. The plaintiff Edward H. Dudley is the husband of Mrs. Davis, they having been married in November, 1914, following the decease of Davis, and they lived on the farm. He neglected Mrs. Dudley's interest, and was of intemperate habits. This condition caused much dissatisfaction on the part of

Mrs. Dudley up to the time of her death, and by reason thereof their relations became antagonistic and much estranged.

The defendant, Minnie Davis Hull, in 1919 and prior to that, lived with her husband on the farm of Mrs. Dudley and assisted in the care of the farm, crops and stock. The relations of Hull and Dudley became increasingly unfriendly and late in 1919, or early in 1920, Dudley left home and remained away about six months. Mrs. Dudley requested her husband to return, but he refused until Hull left the farm. While Dudley was absent defendant was informed and believed he was endeavoring to obtain a conveyance from Mrs. Dudley of her farm or an interest therein. In consequence, on June 23d, 1920, the defendant brought an action against Mrs. Dudley to set aside the deed given by her father to her mother. Mrs. Dudley employed Mr. Klein to defend the action and thereafter he and Mr. Carmody, who represented Mrs. Hull, endeavored to settle the differences between the mother and daughter. After this action was brought the Hulls left the farm, and Dudley returned and resumed living with his wife on the farm. In June, 1921, Mrs. Dudley discharged Mr. Klein and retained James A. Peasley as her attorney. The action was never brought to trial. Long before Mrs. Dudley's death a complete reconciliation occurred between the mother and daughter, and intimate and affectionate relations between them were re-established and continued until Mrs. Dudley's death.

Mrs. Dudley suffered a stroke on October 20th, 1921. The physician advised that Mrs. Dudley be taken to a hospital, but Dudley took no steps to secure her removal, but engaged a woman to assist in her care. The day following Mrs. Dudley's stroke Mr. and Mrs. Hull came to the farm, and the doctor consenting, Mrs.

Dudley *v.* Hull.

Dudley was removed to her daughter's home in Milford, where she remained and received competent care, a physician and a nurse, until her death. After Mrs. Dudley had been in Milford for some time she, of her own motion, caused James A. Peasley, her attorney, to be sent for, and he prepared the quitclaim deed conveying the farm to her daughter, the defendant. Mrs. Dudley was at this time of sound mind and had full opportunity to confer with her counsel as to the effect of her act. She was then and had been since April, 1922, in the exclusive possession and control of this farm. The claims presented to the administrator of the estate of Mrs. Dudley aggregate $1,307.36, of which $550 is for the funeral expenses, and $200 for nursing in her last illness. The court reached the conclusion that Mrs. Dudley was of sound mind at the execution of the deed, and that it was not procured by coercion, importunity, or undue influence exerted by the defendant, or·anyone else.

*William E. Thoms,* for the appellants (plaintiffs).

*Charles S. Hamilton,* for the appellee (defendant).

WHEELER, C. J. The appeal contains assignments of error based upon rulings on evidence and exceptions to the failure to find, and in the finding of, certain facts; the additional reason of appeal contains a single assignment of error, the denial of the plaintiffs' motion for a new trial.

We consider, first, the denial of the plaintiffs' motion for a new trial. In our practice such a motion is sometimes denominated a motion and sometimes a petition. The facts upon which plaintiffs based their motion for a new trial were, that the official stenographer who had taken down the testimony offered

Dudley *v.* Hull.

upon the trial had deceased prior to the filing of the finding by the trial judge, that the notes of the stenographer cannot be transcribed, that the trial judge is unable fully and fairly to set forth the testimony, and in consequence the plaintiffs have been unable to comply with the rule that requires a transcript of the stenographer's notes to accompany exceptions to the refusal of the trial court to correct the finding. The trial court reached the conclusion, that the plaintiffs having prosecuted their appeal and made the refusal of the trial court to correct the finding a ground of appeal the motion should be denied, and that the claim of law that the plaintiffs were entitled to a new trial should be overruled, and rendered judgment in favor of defendant. The judgment was right, though the method of reaching it would be difficult to justify.

A motion or petition for a new trial, while not an independent action, but a proceeding ancillary to the original action in which the judgment sought to be relieved against was rendered, is to be determined upon its own issues and regardless of those raised by the appeal from the judgment on the merits. When both are taken at the same time, we see no legal or practical reason why one appeal should not include the claimed errors made by the trial court, and the claimed error made by the trial court in the denial of the motion or petition for a new trial. Our statute authorizing the granting of new trials was enacted in 1762; the statute was continued in substantially the early form as late as in § 199 at page 41 of the Revision of 1866, viz.: "The Superior Court shall and may from time to time as occasion may require, and as by it shall be judged reasonable and proper, grant new trials of causes that shall come before it for mispleading, or discovery of new evidence, or for other reasonable cause, according to the common and usual rules and

methods in such cases." Our statutes also included
from an early time the provision found in the Revision
of 1866, at page 390: "Sect. 9. Courts of equity may
grant new trials for newly discovered evidence, or
any other reasonable cause, according to the course of
proceedings in equity."

We announced the rule of equity in *Day* v. *Welles,*
31 Conn. 344, 349, to be: "But the rule is clear, that
equity will not interfere to grant a new trial in an ac-
tion at law, however unjust the judgment or great the
hardship, unless the judgment was obtained through
fraud, accident or mistake, unconnected with any neg-
ligence or inattention on the part of the judgment
debtor, and the rule is founded on the necessity of the
case; for if it was otherwise, petitions to set aside or
enjoin judgments at law would become too common,
and a court of equity be compelled generally to revise
decisions at law which on legal principles should be
final."

In the next Revision of the statutes, that of 1875,
§ 1, at page 447, the revisers—evidently in the interest
of brevity and because they were of the opinion that
the right of a court of equity to grant new trials was
inherent in the court, and every power of that court
to grant new trials not expressly found in the statutes
was included in the clause, "or other reasonable cause,
according to the usual rules in such cases"—shortened
the provision in use prior to this time and omitted the
statute authorizing courts of equity to grant new trials.
There was added in the Revision of 1875 to the two
specified causes—"mispleading, or the discovery of new
evidence," another cause,—"want of actual . . . op-
portunity to appear and defend, when a just defence
in whole or part existed." In *Smith* v. *Hall,* 71 Conn.
427, 42 Atl. 86, an action was brought in New Haven
County to foreclose a judgment lien on land in that

county, based on a judgment rendered in Litchfield County; the defendant filed a cross-complaint in the original action on the ground of newly-discovered evidence and prayed for an injunction against the prosecution of the foreclosure action. We held that only the court in Litchfield County could take jurisdiction of defendant's cross-complaint and that the facts averred in the cross-complaint might properly be considered as grounds for a new trial had the complaint been made to the court having jurisdiction. In the course of the opinion MR. JUSTICE BALDWIN said (p. 432): "New trials may be granted for legal cause. They may also be granted for equitable cause, when no legal ground for such relief is shown. Such a power is inherent in courts of equity, and is confirmed by General Statutes, § 1125." This reference is to the Revision of 1888, and the section is identical with the corresponding section of the Revision of 1875. MR. JUSTICE BALDWIN was a member of the committee which prepared the Revision of 1875; his statement of the construction of the clause "other reasonable cause" as including equitable causes may be taken as expressing the view of that committee, and their intention, in omitting from their Revision the statute granting authority to courts of equity to grant new trials, to excise an unnecessary statute the purpose of which was fully included in the authority to grant new trials for "other reasonable cause." In *Bissell* v. *Dickerson*, 64 Conn. 61, 67, 28 Atl. 226, the court said, again by MR. JUSTICE BALDWIN: "The statute respecting this subject authorizes courts to grant new trials, 'for mispleading, discovery of new evidence, or other reasonable cause, according to the common and usual rules and methods in such cases.' This is so far from being a prohibition, it may be considered as conferring a power to grant new trials where the verdict is against evi-

Dudley *v.* Hull.

dence; for this comes clearly within the expression, 'for reasonable cause, according to the common rules.' It would seem clear, both by the common and statute law, our courts possess this power." The granting of new trials where the verdict is against the evidence cannot be held to be of the "same general character" as the causes specified in the statute in 1894, when *Bissell* v. *Dickerson* was decided. In *Brown* v. *Congdon,* 50 Conn. 302, 309, we held, two judges dissenting, that a new trial would not be granted based upon the misconduct of a juror and that the only proper remedy was a motion in arrest of judgment. We are not now concerned in considering whether this position, at this later day, is sound; we cite it for the purpose of disclosing the court's construction of the new trial section of the Revision of 1875, to be: "We regard the practical construction of the statute of 1762 as the correct one. New trials may be granted for mispleading, newly discovered evidence, want of notice, or a reasonable opportunity to appear and defend when a good defence exists, 'or other reasonable cause.' Several causes are enumerated, and then follows the general clause, which, according to a familiar rule of construction, was intended to embrace other causes only of the same general character. The causes enumerated result from mistakes or accidents, and show that the party has been deprived of some right or privilege that the law intended he should have. They relate to the merits of the case and indicate a probable failure of justice." If this opinion had confined its construction of the words, "or other reasonable cause" to its statement as "embracing other causes only of the same general character," it would have been impossible to have brought the causes, held in *Bissell* v. *Dickerson,* and *Smith* v. *Hall, supra,* as within "other reasonable

cause," and at the same time "of the same general character" as the three causes specified in the statute. The opinion, however, does not leave its meaning of "causes of the same general character" in doubt. Immediately following this statement, the opinion explains that these "result from mistakes or accidents, and show that the party has been deprived of some right or privilege that the law intended he should have. They relate to the merits of the case and indicate a probable failure of justice." The failure to include instances of fraud as among those included under mistake and accident was no doubt an inadvertence. Had it been included, the explanation would have covered the classes of grounds upon which equity will interfere in this jurisdiction to grant a new trial, and thus conformed to the rule of *Day* v. *Welles, supra.* This would then have accorded with the construction of this statute found in *Smith* v. *Hall, supra,* that new trials may be granted for equitable cause as was confirmed by this statute, and obviously referring to the part of the statute found in the words "other reasonable cause."

In *Etchells* v. *Wainwright,* 76 Conn. 534, 540, 57 Atl. 121, we held that the plaintiff, who alleged in his motion that on account of the decease of the trial judge he was unable to obtain a finding and have the rulings of the trial judge reviewed on appeal, did not have, upon these allegations, a right to a new trial. In relying upon *Brown* v. *Congdon, supra,* we failed to note to what extent the explanation of the words "the same general character" carried us. Upon the facts, the case fell within the class of accidents. The harshness of this rule led to the enactment of the present § 5825 of the General Statutes, granting a remedy in future like cases. In the recent case of *Perry* v. *Puklin Co.,* 100 Conn. 104, 123 Atl. 28, we construe our present

Dudley v. Hull.

statute, General Statutes, § 5850, and restate our rule of practice, at page 109, in this way: "The grounds upon which the plaintiff seeks relief are three: first, a fraudulent and champertous agreement between Weinberg and the defendant in connection with the beginning of the action; second, untrue and deceptive representations by defendant with regard to the issues that would be raised on the trial; and third, newly-discovered evidence upon the issues which were actually litigated. The action could probably have been maintained, upon proper facts alleged, so far as the two grounds mentioned first are concerned, in an equitable action independent of statute; but could also be brought, as has in this case been done, by virtue of the statute, General Statutes, § 5850, which provides for several grounds of action, among them the discovery of new evidence and 'for other reasonable cause, according to the usual rules in such cases." By our practice, the clause last quoted has been employed to state any cause, legal or equitable, seeking a new trial for reasons other than those specifically mentioned in the statute."

The death of the stenographer, as in the case of the judge, if it prevented the plaintiffs from having their fair opportunity to have their case heard on appeal, is an equitable cause and within the "reasonable cause" specified in General Statutes, § 5850; if this were not so, the power would have been inherent in the Superior Court as a court of equity to grant a new trial for such a cause. The power will only be exercised in an appropriate case, that is, where the allegations made, and the facts found, bring the case within the recognized limits of the court's authority. The conclusion reached by the court—that the plaintiffs, having made the refusal of the trial court to correct the finding a ground of appeal, a new trial could

not be granted—cannot be supported. The granting of a new trial must stand upon the facts proven and they must bring the remedy within the classes of grounds recognized by our law. A new trial will not be granted when the newly-discovered evidence would not change the result. *Selleck* v. *Head,* 77 Conn. 15, 17, 58 Atl. 224; *Button* v. *Button,* 80 Conn. 157, 160, 67 Atl. 478; *Parsons* v. *Platt,* 37 Conn. 563. The petition or motion for a new trial must show that "substantial justice was not or may not have been done." *Burns* v. *State,* 84 Conn. 518, 521, 80 Atl. 712. The facts found do not enable us to know whether the original judgment is open to this serious charge.

The new trial is desired in this case in order to enable the plaintiffs to file a transcript of the stenographer's notes to accompany exceptions to the refusal of the court to correct the finding. What effect the corrections will have upon the case is not found, nor are any facts found that apprise us of the importance of these corrections. The finding does not present a case upon which a court of equity could grant a new trial, nor did the allegations of the motion.

Two letters addressed by Mr. Klein, attorney for Mrs. Dudley, to Mr. Carmody, attorney for Mrs. Hull, the defendant, during the pendency in July and August, 1920, of the action brought by Mrs. Hull against her mother to set aside the conveyance of her father's interest in the farm to her mother, were offered in evidence for the purpose of showing the state of feeling of Mrs. Dudley for her daughter at that time by certain statements therein of matters which had been stated to Mr. Klein by Mrs. Dudley. It does not appear that Mrs. Dudley either authorized, or subsequently ratified, the making to Mr. Carmody of such statements on her part; so far as the record discloses the statements were mere hearsay. Aside from

that, we could not say from the condition of this record that they were likely to have affected the making of the conveyance. Error will not be predicated upon a ruling on evidence unless the record shows that the ruling was material to the conclusion reached.

Dr. Cooley—the physician who was present when a will was prepared by Mr. Davis in the presence of Mrs. Davis—his wife, later Mrs. Dudley—at St. Luke's Hospital in New York—testified, against the objection and exception of the plaintiffs, that there was then "an understanding that the property would go to Minnie, (the defendant) the daughter, after Mrs. Dudley's death." This time was about the time when Davis conveyed to his wife his interest in this farm. The evidence was admissible as tending to show that Mrs. Dudley, in conveying this farm to her daughter, was carrying out the understanding reached with her husband in St. Luke's Hospital. The administrator was permitted to testify as to the amount of the claims and the amount of cash from the conversion of all of the assets of Mrs. Dudley's estate as one of the circumstances surrounding these parties and the making of the conveyance to Mrs. Hull. This evidence was admitted as one element of the circumstances surrounding the transaction in suit, but excluded as tending to show that the conveyance was fraudulent as against creditors, or that the estate was bankrupt. The ruling was right, except that this evidence was admissible as tending to show the unlikeliness that Mrs. Dudley would convey away the property needed to meet her funeral expenses, the expenses of her illness and outstanding claims. The limitation placed upon the admission of this evidence would not prevent this evidence being considered for the purpose for which we hold it to be admissible; we know of no other purpose for which it could have been used and

we assume this must have been the ultimate purpose for which it was admitted, and for which it was used. Further, we could not hold, upon the record, that this evidence, if erroneously admitted, was a harmful error. There is no error.

In this opinion the other judges concurred.