KATHLEEN BORKOWSKI *v.* JOHN J. BORKOWSKI
(14705)

PETERS, C. J., BORDEN, BERDON, KATZ and PALMER, Js.

Argued December 1, 1993—decision released March 15, 1994

*Wesley W. Horton,* with whom were *Michael S. Taylor,* certified legal intern, and, on the brief, *Lloyd Frauenglass* and *Alexandra Davis,* for the appellant (defendant).

*Averum J. Sprecher,* for the appellee (plaintiff).

KATZ, J. This is an appeal from a postjudgment modification rendered in a dissolution of marriage action. The defendant, John J. Borkowski, appeals from the judgment of the Appellate Court which affirmed

a trial court order partially granting his motion for modification and/or termination of the unallocated alimony and support order. We reverse.

The following facts are undisputed. The plaintiff, Kathleen B. Brick, and the defendant were married in New Jersey on December 14, 1968. Their marriage was dissolved on August 23, 1983, on the grounds of intolerable cruelty by the defendant. At the time of dissolution, the trial court's decree awarded custody of the parties' four minor children to the plaintiff, and ordered the defendant to pay unallocated alimony and child support of $3000 per month. By motion dated February 25, 1988, the defendant sought a modification of the decree on the grounds that one minor child had reached majority and another had moved into the defendant's home. Pursuant to that motion, the trial court reduced the unallocated order by $500 per month, requiring the defendant to pay $2500 monthly.

On March 30, 1990, the defendant filed a second motion for modification to reduce the unallocated order of alimony and child support. While that motion was pending, the plaintiff filed a motion for modification to increase the order. Thereafter, following a joint evidentiary hearing on July 9, 1990, the trial court granted both motions, reducing the unallocated order by $250 per month to reflect that a second minor child had reached majority, and increasing the order by $250 per month because of the plaintiff's chronic medical problems. As a result of the trial court's concurrent orders, the unallocated support and alimony remained $2500 per month.

On April 12, 1991, the defendant filed the motion for modification of unallocated alimony and child support that is the subject of this appeal. In his motion, the defendant sought a modification of the latest unallocated order by "reducing and/or terminating the unal-

located support payable to the plaintiff and/or entering a separate order of support for the [remaining minor child not in his custody]." Following an evidentiary hearing, the trial court found that, because the plaintiff was earning more and the defendant was earning less, there had been a substantial change in circumstances as to the parties' income. The trial court also found that the plaintiff's medical condition, which had been complicated by a 15 percent permanent disability of her cervical spine, remained problematic.[1] On the basis of these findings, the trial court granted the defendant's motion to modify the unallocated order but denied the defendant's motion to terminate alimony. Specifically, the trial court separated the unallocated order into distinct alimony and child support orders, and reduced the defendant's total amount of monthly payments to the plaintiff.[2]

The defendant appealed the trial court's order to the Appellate Court, claiming that the trial court had improperly admitted evidence of events and conditions that had occurred prior to the last modification of the unallocated order. In a per curiam decision the Appellate Court affirmed the judgment of the trial court. *Borkowski* v. *Borkowski*, 29 Conn. App. 925, 618 A.2d 588 (1993). Thereafter, the defendant petitioned this court for certification to appeal, which we granted, limited to the following issue: "When a party files a motion

[1] The trial court stated: "[T]here has been a substantial change in circumstances as to the plaintiff's and the defendant's income. The plaintiff is now working and the defendant is earning less. However, the plaintiff's health though improved is still a problem for her and is now complicated by a 15% permanent total disability of her cervical spine."

[2] The trial court ruled as follows: "Commencing on January 1, 1992, the defendant shall pay to the plaintiff the sum of $300 per week as alimony and shall pay to the plaintiff for the support of the minor child . . . during the term of his minority, i.e., until July 10, 1992, the sum of [$150] per week. The present order of unallocated alimony and support are to continue until January 1, 1992."

to modify which seeks termination of alimony after a prior modification of alimony, may the trial court consider any change of circumstances arising since the date of the original decree?" *Borkowski* v. *Borkowski,* 225 Conn. 908, 909, 621 A.2d 289 (1993).

The defendant's claim on appeal relates to evidentiary rulings made by the trial court. At trial, the court admitted into evidence, over the defendant's objection: (1) the plaintiff's testimony about the cause of her spinal injury in 1981 and about the deterioration of her medical condition since that time; (2) the defendant's testimony on cross-examination concerning the increase of his business' gross receipts subsequent to 1983, the year of the original dissolution decree; (3) the plaintiff's testimony about the diminution in value of an investment account worth $37,000 in 1983; and (4) the plaintiff's testimony concerning the termination of her interest in the defendant's accumulated retirement plan subsequent to 1983.

The defendant argues that the trial court should not have considered this evidence because such consideration led the trial court improperly to base its modification of alimony upon changed circumstances arising subsequent to the original dissolution decree and antecedent to the last modification. The defendant asserts that the trial court should have considered only changed circumstances arising subsequent to the last modification on July 16, 1990, in deciding whether and by how much to modify the unallocated order of support and alimony.

We agree with the defendant's statement of the law and conclude that the trial court improperly considered evidence—all predating the latest modification—relating to the defendant's business income, the plaintiff's investment account and the defendant's retirement account. Accordingly, we reverse.

I

General Statutes § 46b-86[3] governs the modification or termination of an alimony or support order after the date of a dissolution judgment. When, as in this case, the disputed issue is alimony, the applicable provision of the statute is § 46b-86 (a), which provides that a final order for alimony may be modified by the trial court "upon a showing of a substantial change in the circumstances of either party." See *Theonnes* v. *Theonnes,* 181 Conn. 111, 113–14, 434 A.2d 343 (1980). Under that statutory provision, the party seeking the modification bears the burden of demonstrating that such a change has occurred. *Bunche* v. *Bunche,* 180 Conn. 285, 290, 429 A.2d 874 (1980). Because a request for termination of alimony is, in effect, a request for a modifica-

---

[3] General Statutes § 46b-86 provides: "(FORMERLY SEC. 46-54) MODIFICATION OF ALIMONY OR SUPPORT ORDERS AND JUDGMENTS. (a) Unless and to the extent that the decree precludes modification, any final order for the periodic payment of permanent alimony or support or an order for alimony or support pendente lite may at any time thereafter be continued, set aside, altered or modified by said court upon a showing of a substantial change in the circumstances of either party or upon a showing that the final order for child support substantially deviates from the child support guidelines established pursuant to section 46b-215a, unless there was a specific finding on the record that the application of the guidelines would be inequitable or inappropriate. There shall be a rebuttable presumption that any deviation of less than fifteen per cent from the child support guidelines is not substantial and any deviation of fifteen per cent or more from the guidelines is substantial. Modification may be made of such support order without regard to whether the order was issued before, on or after May 9, 1991. In determining whether to modify a child support order based on a substantial deviation from such child support guidelines the court shall consider the division of real and personal property between the parties set forth in the final decree and the benefits accruing to the child as the result of such division. After the date of judgment, modification of any child support order issued before or after July 1, 1990, may be made upon a showing of such substantial change of circumstances, whether or not such change of circumstances was contemplated at the time of dissolution. By written agreement, stipulation or by decision of the court, those items or circumstances that were contemplated and are not to be changed may be specified in the written agreement, stipulation or decision of the court. This

tion, this court has treated as identical motions to modify and motions to terminate brought under § 46b-86 (a). See *Scott* v. *Scott,* 190 Conn. 784, 788, 462 A.2d 1054 (1983); *Jacobsen* v. *Jacobsen,* 177 Conn. 259, 262–63, 413 A.2d 854 (1979).

The traditional purpose of alimony is to meet one's "continuing duty to support." *Blake* v. *Blake,* 211 Conn. 485, 498, 560 A.2d 396 (1989); *Rubin* v. *Rubin,* 204 Conn. 224, 228, 527 A.2d 1184 (1987); *Weiman* v. *Weiman,* 188 Conn. 232, 234, 449 A.2d 151 (1982). Section 46b-86 "reflects the legislative judgment that continuing alimony payments should be based on current conditions." *Rubin* v. *Rubin,* supra, 236. Thus, "[t]o avoid re-litigation of matters already settled, courts in modification proceedings allow the parties

---

section shall not apply to assignments under section 46b-81 or to any assignment of the estate or a portion thereof of one party to the other party under prior law. No order for periodic payment of permanent alimony or support may be subject to retroactive modification, except that the court may order modification with respect to any period during which there is a pending motion for modification of an alimony or support order from the date of service of notice of such pending motion upon the opposing party pursuant to section 52-50.

"(b) In an action for divorce, dissolution of marriage, legal separation or annulment brought by a husband or wife, in which a final judgment has been entered providing for the payment of periodic alimony by one party to the other, the superior court may, in its discretion and upon notice and hearing, modify such judgment and suspend, reduce or terminate the payment of periodic alimony upon a showing that the party receiving the periodic alimony is living with another person under circumstances which the court finds should result in the modification, suspension, reduction or termination of alimony because the living arrangements cause such a change of circumstances as to alter the financial needs of that party.

"(c) When one of the parties, or a child of the parties, is receiving or has received aid or care from the state under its afdc program as provided in Title IV-A of the Social Security Act or under its foster care program as provided in Title IV-E of the Social Security Act, or where one of the parties has applied for child support enforcement services under Title IV-D of the Social Security Act as provided in section 17-578, such motion to modify shall be filed with the family support magistrate division for determination in accordance with subsection (m) of section 46b-231."

only to present evidence going back to the latest petition for modification. . . . Alimony decrees may only be modified upon proof that relevant circumstances have changed since the original decree was granted." H. Clark, Law of Domestic Relations (1968) § 14.9, p. 456. It is, therefore, well established that when a party, pursuant to § 46b-86, seeks a postjudgment modification of a dissolution decree that earlier had been modified, he or she must demonstrate that a substantial change in circumstances has arisen subsequent to the entry of the earlier modification. *Benson* v. *Benson,* 187 Conn. 380, 383 n.3, 446 A.2d 796 (1982); *Theonnes* v. *Theonnes,* supra, 181 Conn. 114; *Cleveland* v. *Cleveland,* 161 Conn. 452, 459–60, 289 A.2d 909 (1971).

"In general the same sorts of [criteria] are relevant in deciding whether the decree may be modified as are relevant in making the initial award of alimony. They have chiefly to do with the needs and financial resources of the parties." (Internal quotation marks omitted.) *Sanchione* v. *Sanchione,* 173 Conn. 397, 401–402, 378 A.2d 522 (1977); H. Clark, supra, § 14.9, pp. 456–57; see also *Hardisty* v. *Hardisty,* 183 Conn. 253, 258–59, 439 A.2d 307 (1981). More specifically, these criteria, outlined in General Statutes § 46b-82,[4] require the court to consider the needs and financial resources of each of the parties and their children, as well as such factors as the causes for the dissolution of the marriage and the age, health, station, occupation, employability and amount and sources of income of the parties.

---

[4] General Statutes § 46b-82 provides in relevant part: "In determining whether alimony shall be awarded, and the duration and amount of the award, the court shall hear the witnesses, if any, of each party . . . shall consider the length of the marriage, the causes for the . . . dissolution of the marriage or legal separation, the age, health, station, occupation, amount and sources of income, vocational skills, employability, estate and needs of each of the parties and the award, if any, which the court may make pursuant to section 46b-81, and, in the case of a parent to whom the custody of minor children has been awarded, the desirability of such parent's securing employment."

In *Hardisty* v. *Hardisty,* supra, 183 Conn. 258–59, we stated: "Once a trial court determines that there has been a substantial change in the financial circumstances of one of the parties, the same criteria that determine an initial award of alimony . . . are relevant to the question of modification. *Sanchione* v. *Sanchione,* [supra, 173 Conn. 401–402]; see also [H. Clark, supra], § 14.9, pp. 456–57." By so bifurcating the trial court's inquiry, however, we did not mean to suggest that a trial court's determination of whether a substantial change in circumstances has occurred, and its determination to modify alimony, are two completely separate inquiries. Rather, our bifurcation of the trial court's modification inquiry was meant to reflect that, under our statutes and cases, modification of alimony can be entertained and premised upon a showing of a substantial change in the circumstances of either party to the original dissolution decree. General Statutes § 46b-86. Thus, once the trial court finds a substantial change in circumstances, it can properly consider a motion for modification of alimony. After the evidence introduced in support of the substantial change in circumstances establishes the threshold predicate for the trial court's ability to entertain a motion for modification, however, it also naturally comes into play in the trial court's structuring of the modification orders. See, e.g., *Jacobsen* v. *Jacobsen,* supra, 177 Conn. 263–65 (where the plaintiff was employed and no longer had the obligations of custody, the trial court properly relied upon such "substantially changed circumstances" to warrant a termination of alimony).

The original decree or any subsequent order is an adjudication by the trial court as to what is right and proper at the time it is entered. To obtain a modification, the moving party must demonstrate that circumstances have changed since the last court order such that it would be unjust or inequitable to hold either

party to it. Because the establishment of changed circumstances is a condition precedent to a party's relief, it is pertinent for the trial court to inquire as to what, if any, new circumstance warrants a modification of the existing order. In making such an inquiry, the trial court's discretion is essential. The power of the trial court to modify the existing order does not, however, include the power to retry issues already decided; H. Clark, supra, § 14.9, p. 456; or to allow the parties to use a motion to modify as an appeal. See *Hein* v. *Hein,* 127 Conn. 503, 507, 18 A.2d 374 (1941). Rather, the trial court's discretion includes only the power to adapt the order to some distinct and definite change in the circumstances or conditions of the parties.

Therefore, although the trial court may consider the same criteria used to determine the initial award "without limitation"; *Hardisty* v. *Hardisty,* supra, 183 Conn. 259; in doing so, its inquiry is necessarily confined to a comparison between the current conditions and the last court order.[5] To permit the trial court to reconsider all evidence dating from before the original divorce proceedings, in determining the adjustment of alimony, would be, in effect, to undermine the policy behind the well established rule of limiting proof of the substantial change of circumstances to events occurring subsequent to the latest alimony order—the avoidance of relitigating matters already settled. H. Clark, supra, § 14.9, p. 456. Applicable to dissolution actions, as well as to other kinds of litigation, is the principle

[5] While we recognize that the cause of the dissolution and the length of the marriage do not change, the health, employability and financial circumstances of the parties do. Thus, when comparing the parties' *current* circumstances with their circumstances at the time of the last modification, with the criteria of General Statutes § 46b-82 in mind, the trial court's consideration of the cause of the dissolution and the length of the marriage are the only circumstances that both predate the last modification and remain current.

that an adjudication by a court having jurisdiction of the subject matter and the parties is final and conclusive not only as to matters actually determined, but as to matters which the parties might have litigated as incident thereto and coming within the legitimate purview of the subject matter of the action. Id. This policy of avoiding duplicitous litigation is particularly important in the context of family law where courts should "welcome the opportunity to ease the burden of post-divorce litigation over enforcement or modification of alimony claims"; S. Reynolds, "The Relationship of Property Division and Alimony: The Division of Property to Address Need," 56 Fordham L. Rev. 827, 834 (1988); and attempt to foster amicable dissolution and certainty. A court, having performed its function of ruling upon a controversy, cannot be taken over by the litigants for the continued readjudication and reconsideration of their affairs. To allow otherwise would waste time and leave an undesirable uncertainty in the economic affairs of the parties.

Keeping these principles in mind, we continue to hold that the trial court has broad discretion in making its determination of the applicability of the criteria outlined in § 46b-82. *Hardisty* v. *Hardisty,* supra, 183 Conn. 259–60. " 'The well settled standard of review in domestic relations cases is that this court will not disturb trial court orders unless the trial court has abused its legal discretion or its findings have no reasonable basis in the facts. *Gallo* v. *Gallo,* [184 Conn. 36, 50, 440 A.2d 782 (1981)].' *McGuinness* v. *McGuinness,* 185 Conn. 7, 13, 440 A.2d 804 (1981)." *Fahy* v. *Fahy,* 227 Conn. 505, 517, 630 A.2d 1328 (1993). "As has often been explained, the foundation for this standard is that the trial court is in a clearly advantageous position to assess the personal factors significant to a domestic relations case . . . ." *McGuinness* v.

*McGuinness,* supra, 13. Notwithstanding the great deference accorded the trial court in dissolution proceedings, a trial court's ruling on a modification may be reversed if, in the exercise of its discretion, the trial court applies the wrong standard of law. *Fahy* v. *Fahy,* supra, 517–18.

Applying these principles to the facts of this case, we conclude that, by considering evidence of events and conditions antecedent to the last modification, the trial court applied an incorrect legal standard in determining whether there had been a substantial change of circumstances warranting a modification. Accordingly, the trial court's modification of the dissolution decree constituted an abuse of discretion.

## II

## A

Having determined that the trial court applied an incorrect legal standard, we now consider the defendant's evidentiary claims raised on appeal. We reject the defendant's first claim, namely, that the trial court improperly admitted into evidence certain testimony concerning the plaintiff's medical condition prior to the last modification. Specifically, the defendant claims that the trial court should not have considered the plaintiff's testimony that: (1) her cervical spine injury in 1981 was caused by the defendant throwing her to the floor and later to the driveway; and (2) as a result of the subsequent deterioration of her condition, she was forced to undergo a surgical procedure known as an "anterior cervical fusion" in June, 1990. The defendant argues that under *Benson* v. *Benson,* supra, 187 Conn. 380, the trial court should have limited its determination of changed circumstances in the present modification to events arising subsequent to the entry of the last modification on July 16, 1990. The defendant asserts,

in particular, that by considering evidence from before July 16, 1990, the trial court disregarded case law and, in addition, violated principles of judicial economy and finality by allowing the plaintiff a second opportunity to present evidence that she already had presented, or could have presented, in prior proceedings.

The plaintiff argues, to the contrary, that her testimony concerning the cause of her spine injury and resulting surgery was necessary to establish a foundation for the testimony of her surgeon, Gerald Becker, to which the defendant did not object. At the hearing, Becker testified that he had performed the anterior cervical fusion on the plaintiff in June, 1990, because she had been suffering from degenerative disc disease. Additionally, Becker testified that, based on a reasonable medical probability, there was a causal relationship between the plaintiff's degenerative disc disease—the reason for her surgery—and the physical violence that had been inflicted upon her by the defendant in 1981. Becker further testified that the plaintiff was left with a present overall 15 percent permanent disability of her neck after the surgery.

We agree with the defendant's statement of the law that, for purposes of modifying or terminating obligations under the parties' dissolution decree, in determining whether the circumstances had changed, the trial court is limited to considering events arising subsequent to July 16, 1990, the date of the last modification. *Benson* v. *Benson,* supra, 187 Conn. 383 n.3. In light of Becker's testimony, however, we conclude that the trial court properly admitted the plaintiff's testimony about the cause of her cervical spine injury in 1981, and her resulting need for surgery. Although both the plaintiff's injury and her surgery predated the most recent modification in July, 1990, the plaintiff only developed her 15 percent permanent disability subsequent to that

modification. Thus, the plaintiff's disability represents a "substantial change in the circumstances" that arose subsequent to the entry of the last modification. Id.

Despite the defendant's claim to the contrary, the trial court, by admitting the plaintiff's testimony, did not permit the plaintiff to relitigate issues she already had raised or could have raised in prior dissolution proceedings. Rather, the plaintiff's testimony was needed to establish an adequate foundation for Becker's expert testimony, which, in turn, tended to prove the present existence of the plaintiff's disability. "In order to render an expert opinion the witness must be qualified to do so and there must be a factual basis for the opinion." *State* v. *Asherman,* 193 Conn. 695, 716, 478 A.2d 227 (1984), cert. denied, 470 U.S. 1050, 105 S. Ct. 1749, 84 L. Ed. 2d 814 (1985). Thus, "[t]he facts upon which an expert's opinion is based are an important consideration in determining the admissibility of his [or her] opinion." *Going* v. *Pagani,* 172 Conn. 29, 34, 372 A.2d 516 (1976).

The plaintiff's testimony concerning the cause of her injury and the subsequent deterioration of her medical condition furnished the facts upon which Becker's expert testimony was based. In the absence of the testimony, the trier of fact would have had little if any factual basis against which to weigh Becker's credibility and from which to assess the probative value of Becker's expert testimony. Notably, the defendant did not offer to stipulate to the causal connection between the plaintiff's injury, her subsequent development of a degenerative disc disease and her resulting need for surgery. In the absence of such a stipulation by the defendant, the plaintiff's testimony established the foundation for Becker's expert testimony. In addition to its relevance in establishing that a substantial change in circumstances had occurred subsequent to the last

modification, the plaintiff's testimony also was material to the trial court's adjustment of alimony. Becker's expert testimony causally linked the plaintiff's 1981 injury to her development of a degenerative disc disease, to her subsequent need for surgery, and ultimately to her development of a disability. Thus, taken together, the plaintiff's testimony and Becker's expert testimony established that the defendant had caused the substantial change in circumstances—i.e., the plaintiff's disability—warranting a modification. Accordingly, we conclude that the trial court properly ruled to admit the evidence.

As already stated, once the trial court has determined that there has been a substantial change in the circumstances of either party subsequent to the last modification, the same criteria outlined in § 46b-82, used to determine an initial award of alimony, are relevant to the question of modification. *Hardisty* v. *Hardisty,* supra, 183 Conn. 258–59; *Sanchione* v. *Sanchione,* supra, 173 Conn. 401–402. Under § 46b-82, the trial court, when awarding alimony, should consider "the causes for the . . . dissolution of the *marriage.*" (Emphasis added.) We see no reason why the trial court, in determining whether alimony should be modified or terminated, should not be permitted also to consider the causes for a party's substantial change of circumstances.

"Although created by statute, a dissolution action is essentially equitable in nature. . . . The power to act equitably is the keystone to the court's ability to fashion relief in the infinite variety of circumstances which arise out of the dissolution of marriage. . . . Although in making its financial determinations the court is required to consider [the criteria outlined in § 46b-82] in the exercise of its inherent equitable powers it may also consider any other factors which may be appro-

priate for a just and equitable resolution of the marital dispute. . . . While alimony . . . is not to be considered either as a reward for virtue or as a punishment for wrongdoing, a spouse whose conduct has contributed substantially to the breakdown of the marriage should not expect to receive financial kudos for his or her misconduct. Moreover, in considering the gravity of such misconduct it is entirely proper for the court to assess the impact of the errant spouse's conduct on the other spouse." (Citations omitted; internal quotation marks omitted.) *Robinson* v. *Robinson,* 187 Conn. 70, 71–72, 444 A.2d 234 (1982).

In light of the trial court's equitable powers to consider any factor appropriate for a just and equitable modification of the parties' alimony, we conclude that the trial court properly considered the cause of the plaintiff's permanent disability in determining to modify the plaintiff's alimony. *Robinson* v. *Robinson,* supra, 187 Conn. 71–72. Accordingly, we conclude that the trial court properly admitted the plaintiff's testimony.

B

The defendant next claims that the trial court improperly admitted evidence concerning: (1) the increase in his business income gross receipts subsequent to 1983; (2) the value of the plaintiff's interest in an investment account in 1983, as compared to 1990; and (3) the plaintiff's interest in a retirement account in 1983, as compared to 1990. The defendant asserts that, in admitting this evidence, the trial court applied an improper legal standard to the defendant's request for a termination of alimony, thereby requiring a new hearing. We agree.

At the hearing, the trial court permitted the plaintiff to cross-examine the defendant about the increase in his business income between 1983 and 1990. Specifically, the plaintiff's counsel asked the defendant: "Doc-

tor, without question your business income gross receipts has increased from the year 1983, the year you were divorced, [to 1990] correct?" The defendant answered: "I would assume that it has." The trial court overruled the defendant's objection to the cross-examination, and, in so doing, stated: "If one of [the defendant's] claims is that [he] wishes to *terminate* alimony completely, I would say we would have to look beyond what is done in . . . [1983]." (Emphasis added.)

The court also permitted the plaintiff's counsel to cross-examine her about an investment account worth $37,000 in 1983. Again, the defendant objected to the cross-examination, the objection was overruled and defense counsel took an exception. In overruling the defendant's objection, the trial court stated: "[I]t seems to me that [the testimony] is relevant to these proceedings. You claimed expressly that there was a change of circumstances warranting the *termination* of alimony . . . . One change in circumstances I see is that there was a $37,000 asset that is now $518 and that is a change in circumstances and that is relevant to why and the Court would like to hear it." (Emphasis added.)

Finally, the court permitted the plaintiff's counsel to question her directly about her interest in the defendant's retirement plan in 1983, and about the defendant's subsequent termination of the plan. The plaintiff's testimony revealed that she had been awarded an interest in the defendant's retirement plan at the time of the original dissolution decree, that the defendant had subsequently terminated the plan, that she had not been notified of any other plan having been substituted for the terminated plan, and that she had had no other retirement plan from the time of the plan's termination until her present job. Again, the trial court overruled the defendant's objection to the testimony. In

overruling the defendant's objection, the trial court stated: "I'll allow it as indicating a change in circumstances . . . *from the original conditions of the original decree* . . . and give it whatever weight it's worth." (Emphasis added.)

We conclude that on these three occasions, the trial court improperly admitted evidence over the defendant's objection. For purposes of finding a substantial change in circumstances warranting a modification or termination of alimony, the trial court should have permitted the plaintiff to present only evidence going back to the last modification in July, 1990. *Scott v. Scott,* supra, 190 Conn. 788; *Benson v. Benson,* supra, 187 Conn. 383 n.3. The trial court, however, improperly considered evidence of the defendant's business receipts, evidence of the plaintiff's diminishing interest in an investment account and evidence of the plaintiff's terminated interest in the defendant's retirement plan, all dating back to the original dissolution decree. Evidence concerning these specific financial changes had been raised and considered at earlier modification hearings.[6]

Although, when acting on a motion to modify, the trial court is to examine the same criteria outlined in § 46b-82 used to determine an initial award of alimony;

---

[6] The dissent asserts that in determining the amount of the modification, the trial court could have judicially noticed any facts in the court file, which includes prior memoranda of decision, hearing transcripts and financial affidavits of the parties. Thus, the dissent contends that the trial court properly could have *admitted* all of the facts that the defendant argues are prejudicial. We agree that a trial court may take judicial notice of the court file in the same case. *Brockett v. Jensen,* 154 Conn. 328, 336, 225 A.2d 190 (1966). Such notice, however, only excuses the party having the burden of establishing a fact from the necessity of producing formal proof; *Beardsley v. Irving,* 81 Conn. 489, 491, 71 A. 580 (1909); it does not eliminate the need for a separate determination of whether such facts judicially noticed are relevant and therefore admissible. *State v. Bunkley,* 202 Conn. 629, 648–49, 522 A.2d 795 (1987).

*Hardisty* v. *Hardisty,* supra, 183 Conn. 258–59; it should evaluate the circumstances of the parties as they exist at the time of the modification hearing, compare them to what they were at the time of the last court order and arrive at a fair and equitable determination. *Jacobsen* v. *Jacobsen,* supra, 177 Conn. 265. In the present case, by considering evidence dating back to the original dissolution decree, the trial court did not compare the plaintiff's current financial situation with her financial status at the time of the most recent modification. Rather, the trial court compared the plaintiff's current financial situation with her financial status at the time of the original decree. As a result, the trial court not only was able to find a much greater change in circumstance, but also, in effect, retried issues relating to the plaintiff's financial status that already had been settled at previous modification hearings. Accordingly, the trial court's application of an incorrect legal standard was improper; see *Fahy* v. *Fahy,* supra, 227 Conn. 517–18; and resulted in the trial court's consideration of inadmissible evidence.

The defendant is entitled to relief from the trial court's improper rulings only if one or more of those rulings were harmful. *DiBerardino* v. *DiBerardino,* 213 Conn. 373, 385, 568 A.2d 431 (1990); *Manning* v. *Michael,* 188 Conn. 607, 611, 452 A.2d 1157 (1982); *McCahill* v. *Town & Country Associates, Ltd.,* 185 Conn. 37, 40, 440 A.2d 801 (1981). It is well settled that the burden of establishing harm rests on the appellant. *Swenson* v. *Sawoska,* 215 Conn. 148, 153, 575 A.2d 206 (1990); *Hensley* v. *Commissioner of Transportation,* 211 Conn. 173, 184, 558 A.2d 971 (1989); *Brookfield* v. *Candlewood Shores Estates, Inc.,* 201 Conn. 1, 7, 513 A.2d 1218 (1986). To meet this burden in a civil case, the appellant must show that the ruling "would likely affect the result." *Swenson* v. *Sawoska,* supra.

We conclude that the defendant has sustained his burden of showing that the trial court's improper admission of the evidence in question was likely to have affected the result of the hearing. The trial court's colloquies with counsel demonstrate the trial court's view that it was permitted to go back to the original decree in determining whether a change of circumstances had occurred. Although the trial court did not explicitly recount the evidence in question in its memorandum of decision, it nevertheless made it clear throughout the trial that it considered the evidence to be material to the defendant's claims. We assume that the trial court considered the evidence in determining whether a substantial change of circumstances had occurred and in setting the modification order. As we stated in *Bosworth* v. *Bosworth,* 131 Conn. 389, 391, 40 A.2d 186 (1944), where "[t]he finding of the trial court contains no recitation of the [evidence in question], we may not know what weight it gave the evidence in its decision. We must assume, however, that the court, having ruled that the evidence was material, weighed it with the other evidence in arriving at its conclusion." See *Barbieri* v. *Cadillac Construction Corp.,* 174 Conn. 445, 451, 389 A.2d 1263 (1978) ("Although it may be true that the decision at which the court arrived upon the merits of the case might have been unaffected by this improper finding, we cannot be certain of it. . . . 'A judge has not such control over his mental faculties that he can definitely determine whether or not inadmissible evidence he has heard will affect his mind in making his decision.' "). Accordingly, we conclude that the trial court's improper and prejudicial evidentiary rulings require its decision to be set aside.

The judgment of the Appellate Court is reversed and the case is remanded to that court with direction to

reverse the judgment of the trial court and to remand the case for a new hearing on the defendant's motion for modification.

In this opinion BORDEN and PALMER, Js., concurred.

BERDON, J., with whom PETERS, C. J., joins, dissenting. Although I agree that the trial court incorrectly admitted evidence concerning the three areas outlined in part II B of the majority opinion, I disagree with the reasoning of the majority and the result reached. I conclude that the defendant has failed to sustain his burden of proving that the admission of this evidence was harmful to his case. Indeed, an examination of both the transcript and the trial court's memorandum of decision clearly establishes that this evidence was harmless.

It is clear that before the defendant could be granted any relief on his motion to modify the unallocated order by reducing or terminating alimony, he had to prove that there had been a substantial change in circumstances since the last modification. *Fahy* v. *Fahy,* 227 Conn. 505, 510, 630 A.2d 1328 (1993); *Sunbury* v. *Sunbury,* 216 Conn. 673, 677, 583 A.2d 636 (1990); *Benson* v. *Benson,* 187 Conn. 380, 383 n.3, 446 A.2d 796 (1982); *Theonnes* v. *Theonnes,* 181 Conn. 111, 113–14, 434 A.2d 343 (1980). The transcript indicates that the trial court admitted the evidence in question for the limited purpose of determining whether there had been such a change in circumstances.[1] While this evidence

---

[1] In admitting evidence on the defendant's increase in income since the date of the original decree, the trial court limited the purpose of this evidence as follows: "I think the Court is limited to *change in circumstances.* How far can we look into the original judgments? I will decide that later. We are looking for *change in circumstances* warranting elimination of alimony. . . . I feel that the question asked was relevant to that point." (Emphasis added.)

In admitting evidence on the depletion of the plaintiff's investment account, the trial court limited its purpose as follows: "I don't want to sound like an advocate but it seems to me that it is relevant to these proceedings.

should not have been admitted for this purpose because it pertained to financial information that predated the last modification, it is inconceivable that its admission was harmful to the defendant.

First, the trial court found in favor of the defendant on the issue for which the evidence was admitted— that is, that there had been a substantial change in circumstances since the last modification. This conclusion entitled the defendant to a consideration of whether there should be a modification. "It is a settled rule of law that the admission of evidence which favors the appellant cannot be a ground of error. Maltbie, Conn. App. Proc. § 39." *Gorham* v. *Farmington Motor Inn, Inc.,* 159 Conn. 576, 578–79, 271 A.2d 94 (1970); see also *Ansonia* v. *Cooper,* 66 Conn. 184, 193–94, 33 A. 905 (1895); cf. *Markey* v. *Santangelo,* 195 Conn. 76, 82, 485 A.2d 1305 (1985); *State* v. *Gradzik,* 193 Conn. 35, 39, 475 A.2d 269 (1984).

Second, if we consult the trial court's memorandum of decision,[2] not only did the trial court find in favor of the defendant on this issue, but it is clear that this conclusion was predicated on properly admitted evi-

You claimed expressly that there was a *change of circumstances* warranting the termination of alimony and any evidence as to whether or not there has been a *change in circumstances.* One *change in circumstances* I see is that there was a $37,000 asset that is now $518 and that is a *change in circumstances* and that is relevant to why and the court would like to hear it." (Emphasis added.)

In admitting evidence that the defendant terminated his retirement plan, in which the plaintiff had been granted an interest by the original decree, the trial court limited its purpose as follows: "I'll allow it as indicating a *change in circumstances* . . . from the original conditions of the original decree . . . and give it whatever weight it's worth." (Emphasis added.)

[2] Although the majority acknowledges that the memorandum of decision does not refer to the improperly admitted evidence, the opinion gives no weight to this crucial fact.

dence.[3] The trial court then proceeded, without any reference to the evidence that the majority finds harmful, to modify the order in accordance with the mandates of General Statutes § 46b-82.[4]

I believe that the trial court, in its memorandum of decision, precisely followed our established law. In *Hardisty* v. *Hardisty,* 183 Conn. 253, 258–60, 439 A.2d 307 (1981), Chief Justice Peters, writing for a unanimous court, articulated our law as follows: "Once a trial court determines that there has been a substantial change in the financial circumstances of one of the parties, the same criteria that determine an initial award of alimony and support [see General Statutes §§ 46b-82 and 46b-84] are relevant to the question of modification. . . . These require the court to consider, without limitation, the needs and financial resources of each of the parties and their children, as well as such factors as health, age and station in life. . . . In making its determination of the applicability of these criteria, the trial court has broad discretion . . . ." (Citations omitted.) It is clear from the memorandum of decision that the trial court first considered whether there had been a substantial change in circumstances, then separately considered the question of modification using the criteria in § 46b-82. Accordingly, the admission of this evidence was harmless to the defendant not only

[3] The trial court wrote in its memorandum of decision: "The court finds that there has been a substantial change in circumstances as to the plaintiff's and the defendant's income. The plaintiff is now working and the defendant is earning less. However, the plaintiff's health though improved is still a problem for her and is now complicated by a 15% permanent total disability of her cervical spine. The court finds that the plaintiff's permanent disability and the defendant's diminution in income [were] not contemplated."

[4] The trial court stated: "The court in applying the mandates of General Statutes § 46b-82 to the facts and circumstances of this case and in the exercise of its equitable powers grants the defendant's motion to modify the orders of alimony and support but denies the defendant's motion to terminate alimony."

in regard to the issue of change in circumstances, but also concerning the determination of the modification order.

The majority claims, however, that the evidential rulings were nevertheless harmful because the trial court may have considered the evidence in determining the amount of the modification. To get to this point, the majority states that the evidence admitted to establish a change in circumstances "comes into play in the trial court's structuring of the modification orders." The majority elaborates on this new standard by stating that the trial court, in making its decision regarding the modification of the award, "should evaluate the circumstances of the parties as they exist at the time of the modification hearing, compare them to what they were at the time of the last court order and arrive at a fair and equitable determination." If this means that the change in a party's situation—in this case, for example, the defendant's reduction in income by $668.96 per week—is relevant to anything other than establishing a change in circumstances, it is contrary to our established law. How much a party's income has increased or decreased is not relevant to determining the amount of the modification. What is relevant is the situation of each party in reference to the established criteria of § 46b-82—"the length of the marriage, the causes for the . . . dissolution . . . the age, health, station, occupation, amount and sources of income, vocational skills, employability, estate and needs of each of the parties and . . . [any child support award made] and . . . the desirability of [the custodial] parent's securing employment." In other words, the amount of the modification is based not on the degree or amount of change since the last order, but on the current circumstances of the parties[5] in light of the § 46b-82 criteria.

_____

[5] While the focus should be on the current circumstances of the parties, the trial court has a broad discretion to consider any circumstances "which

See *Rubin* v. *Rubin,* 204 Conn. 224, 236, 527 A.2d 1184 (1987). Nevertheless, the majority concludes that the admission of the evidence was necessarily harmful because under its new standard, the degree or the amount of the change in circumstances is relevant in determining the amount of the modification order. I believe that both this standard and the majority's finding of harmfulness are incorrect.

Even if this court were to overrule such precedents as *Rubin* v. *Rubin,* supra, 204 Conn. 224, and *Hardisty* v. *Hardisty,* supra, 183 Conn. 253, and adopt the new standard announced in the majority opinion, the defendant still would not be entitled to prevail. The appellant bears the burden of proving that improper evidential rulings were harmful. *DiBerardino* v. *DiBerardino,* 213 Conn. 373, 385, 568 A.2d 431 (1990). Furthermore, "[e]rror will not be predicated upon a ruling on evidence unless the record shows that the ruling was material to the conclusion reached." *Dudley* v. *Hull,* 105 Conn. 710, 721, 136 A. 575 (1927). "[T]he conclusions reached by a court in a case tried without a jury will be tested by this court only by a review of the subordinate facts found by the trial court . . . ." *Barbieri* v. *Cadillac Construction Corp.,* 174 Conn. 445, 451, 389 A.2d 1263

---

may be appropriate for a just and equitable resolution of the marital dispute." (Internal quotation marks omitted.) *Sands* v. *Sands,* 188 Conn. 98, 105, 448 A.2d 822 (1982), cert. denied, 459 U.S. 1148, 103 S. Ct. 792, 74 L. Ed. 2d 997 (1983). Therefore, the trial court's discretion in fashioning a modification award should not be circumscribed to exclude circumstances that antedate the last modification order. As we have stated many times, "[a]wards of support and alimony fall within the trial court's equitable powers and [t]he power to act equitably is the keystone to the court's ability to fashion relief in the infinite variety of circumstances which arise out of the dissolution of marriage. *LaCroix* v. *LaCroix,* 189 Conn. 685, 689, 457 A.2d 1076 (1983); *Robinson* v. *Robinson,* 187 Conn. 70, 72, 444 A.2d 234 (1982)." (Internal quotation marks omitted.) *Darak* v. *Darak,* 210 Conn. 462, 478, 556 A.2d 145 (1989). These equitable powers give the court the authority, in fashioning a modification award, to consider all the circumstances it considers relevant in addition to the mandatory criteria of General Statutes § 46b-82.

(1978); *Benson* v. *Benson,* supra, 187 Conn. 383; *Jacobsen* v. *Jacobsen,* 177 Conn. 259, 265, 413 A.2d 854 (1979). This court generally concludes that improper evidential rulings are harmful in cases in which the trial court makes a factual finding based on the improper evidence and that finding may have been relied upon. See, e.g., *Barbieri* v. *Cadillac Construction Corp.,* supra, 450–51; *Putnam, Coffin & Burr, Inc.* v. *Halpern,* 154 Conn. 507, 516, 227 A.2d 83 (1967). On the other hand, this court generally concludes that such rulings are harmless in cases in which the trial court's memorandum of decision makes no reference to the improperly admitted evidence, or in which it is otherwise clear that the evidence was not relied upon. See, e.g., *Eichman* v. *J & J Building Co.,* 216 Conn. 443, 457–58, 582 A.2d 182 (1990); *Season-All Industries, Inc.* v. *R.J. Grosso, Inc.,* 213 Conn. 486, 500, 569 A.2d 32 (1990); *Wolk* v. *Wolk,* 191 Conn. 328, 333, 464 A.2d 780 (1983). Here, the trial court's memorandum of decision makes no such reference, and it is otherwise clear that the trial court did not rely upon the improperly admitted evidence.[6]

---

[6] The majority cites *Bosworth* v. *Bosworth,* 131 Conn. 389, 391, 40 A.2d 186 (1944), as holding that harm must be presumed whenever a trial court improperly admits evidence and fails to indicate in the memorandum of decision what weight that evidence was given. I have two problems with this. First, that case appears to predate this court's establishment of the principle that an appellant bears the burden of proving that an improper evidential ruling was harmful. The earliest case I have found that is cited for this proposition is *DeCarufel* v. *Colonial Trust Co.,* 143 Conn. 18, 21, 118 A.2d 798 (1955). Earlier cases indicate that the burden was on the appellee to show clearly that the ruling was harmless. See, e.g., *Buckingham's Appeal from Probate,* 60 Conn. 143, 160, 22 A. 509 (1891).

Second, the facts of *Bosworth* clearly distinguish it from the present case. The evidence that was improperly admitted in *Bosworth,* which involved an action for divorce, was testimony that the defendant husband had been married before and was divorced by his wife on the ground of intolerable cruelty. *Bosworth* v. *Bosworth,* supra, 131 Conn. 390. This court noted that "the natural effect of such evidence was to impugn the character of the

As previously noted, the memorandum of decision demonstrates that: (1) the trial court found that there had been a substantial change in circumstances, and this conclusion was specifically predicated on properly admitted evidence; and (2) having found a substantial change in circumstances, the trial court relied upon the factors listed in § 46b-82, the proper statutory criteria, in making the modification order. The trial court's memorandum of decision is silent concerning the evidence that was considered in applying the statutory criteria for an award. Without an articulation[7] of the facts the trial court considered in applying the criteria of § 46b-82, it is "sheer speculation" to assume that the court used evidence that was improperly admitted to show a change in circumstances[8] between the 1983 decree and the present in determining the amount of the modification. See *DiBerardino* v. *DiBerardino*, supra, 213 Conn. 385.

I find it troubling that the majority uses verbal acrobatics in order to find harmful that which is clearly harmless. "Substantial errors will be committed for

defendant both as a husband and as a witness." Id., 391. Unlike the improperly admitted evidence in this case, which involved financial matters, the evidence in *Bosworth* concerned the defendant's character and therefore could have affected the trial court's view of his whole case.

[7] See Practice Book § 4051.

[8] Because it is clear that the trial court limited the use of this evidence to the issue of change in circumstances, I do not consider whether the evidence could properly be admitted for purposes of determining the modification order. See footnote 5. Nevertheless, the defendant concedes that in determining the amount of the modification, the trial court could have judicially noticed *and considered* any facts in the court file. The file includes prior memoranda of decision, hearing transcripts and financial affidavits of the parties. So, for example, by consulting the file in this case, the trial court could have taken into consideration the memorandum of decision on the original dissolution decree and all of the prior financial affidavits submitted by the parties. By doing this, the trial court could have properly admitted all of the facts that the defendant argues are objectionable and prejudicial. I fail to appreciate how the admission of the same facts through testimony before the trial court could possibly have prejudiced the defendant.

which a remedy must be given, but an appellate court ought not to be expected to create substance out of shadows, to conjure up errors out of trifles, or to seek for judicial irregularity by microscopic processes, speculative imaginings, or refined reasoning." *Foote v. Brown,* 81 Conn. 218, 227, 70 A. 699 (1908). The Appellate Court was correct when it summarily affirmed the judgment of the trial court.

I respectfully dissent.