[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION REGARDING PLAINTIFF'S MOTION TO MODIFY,CODED NO. 117 AND PLAINTIFF'S MOTION FOR COUNSEL FEES, CODED NO.118
The plaintiff has filed a motion to modify alimony dated November 1, 1996, and coded No. 117, as well as a motion for counsel fees dated November 1, 1996, and coded No. 118. Neither of the two motions were served by a sheriff.
Many of the facts that give rise to the motion to modify alimony are not in dispute. The marriage between the parties was dissolved on July 2, 1992. The defendant was ordered to pay alimony to the plaintiff in the amount of $375 per week until such time as the wife or husband dies, the wife remarries or cohabits which would justify a termination of alimony pursuant to statute, or ten years from the date of the separation agreement, at which time alimony would forever cease and terminate. Alimony was nonmodifiable as to term. The separation agreement was dated July 2, 1992. The agreement also provided for joint custody of the minor child with the residence of the child to be with the wife. The agreement further provided for the husband to pay support to the wife. By agreement of the parties dated July 9, 1997, physical custody of the child was awarded to the defendant and the support order was terminated. The agreement, as stated in open court on July 9, 1997, provided for the termination of support from the defendant to the plaintiff retroactive to August, 1996. The plaintiff's obligation to pay support to the defendant was effective as of July 9, 1997.
The threshold issue regarding the plaintiff's motion to modify alimony is whether there has been a substantial change in circumstances between July 2, 1992 and the present time.
As of July 2, 1992, the plaintiff's gross weekly income was $329 and her net weekly income was $255.21. Included in her weekly deductions was a deduction for a 401K plan in the amount of $21. For the purposes of this motion the court is disregarding that deduction, thereby increasing her net weekly income to $276.21. She was employed as a promotion's assistant by List Services Corporation. She had U.S. savings bonds with a $30,000 estimated value and a pension/retirement plan with a $9984 value. She owned a motor vehicle with $5000 equity. She had $800 in the CT Page 11090 Newton Savings Bank.
As of July 2, 1992, the only liability of the plaintiff was a credit card liability totalling $1100.
As of July 2, 1992, the defendant's assets consisted of the home owned with the plaintiff at 216 Brushy Hill Road, Newtown, Connecticut. He showed the equity of that home to be $211,000, while the plaintiff showed the equity in that home to be in the amount of $181,400. He also had assets consisting of a 1983 Mercedes with a value of $8000; a 1988 Thunderbird with no value; the joint People's account that he showed a balance of $8260, while the wife showed a balance of that account of $12,000; securities totalling $126,494; and pension plans, profit sharing plans, IRA and 401Ks totalling $121,000. He also had a pension with 3M that would pay him between $100 and $200 per month at age sixty-five, which the wife waived any claim to. He had a gross weekly income of $1730.77 and a net weekly income of $1346.28, plus net weekly dividend income of $44.23.
Under the terms of the separation agreement between the parties, the first $10,000 in bank accounts, securities, savings bonds, IRAs and 401Ks were to be set aside for the daughter. The balance of those assets were to be divided 55 percent to the wife and 45 percent to the husband. As a result of that division of 55 percent and 45 percent, the wife received approximately $159,500 in liquid assets and the husband received approximately $130,500 in liquid assets. In addition, the family home owned by the parties at 216 Brushy Hill Road, Newtown, Connecticut was to be sold and the net proceeds, as defined in the separation agreement, were to be divided 55 percent to the wife and 45 percent to the husband. That home was sold in January, 1995. The plaintiff received approximately $69,000 from the sale of the home and the defendant received approximately $56,000 from the sale of the home.
Most of the furniture owned by the parties was awarded to the plaintiff as a result of the separation agreement.
The plaintiff is presently employed by R.M.I. Direct Marketing. Her current job title is credit and collections. She calls people asking them to pay their bills. Her gross weekly income is $528.85 and her net weekly income is $421.56. The court is disallowing her deductions for disability and medical. She has an additional source of income with a net weekly amount of $9 for CT Page 11091 a total net weekly income of $430.56. Her current financial affidavit shows the value of her present residence at 11 Park Lane, Newtown, Connecticut as $180,000. The court finds that its fair market value is $215,000. It has a mortgage of $129,000, and an equity of $86,000. Her additional assets are as follows: (a) motor vehicles — 1993 Saturn with a fair market value $5000, no loan balance, equity $5000; (b) household furnishings and personal effects — total value of $5000; (c) bank accounts — total value $1076.33; (d) stocks, bonds and mutual funds — total value $58,000; (e) life insurance — cash surrender value $55.25; (f) 401K deferred compensation plan — total value $761.58; and (g) other assets, consisting of NDB-IRA account — total value $150,000.
The plaintiff's current financial affidavit shows a liability to MasterCard in the amount of $2688.17. That liability does not exist. Her remaining current liabilities total $5340.90.
The defendant is presently employed as a vice president of sales and marketing for Kable Fulfillment Services, a division of Kable News Company. The parties are in dispute as to the defendant's current income. His financial affidavit shows a gross weekly income of $1980.77 and net weekly income of $1246.66. It also shows other income of net weekly commissions totalling $249.16 and interest/dividends with net weekly income of $100.60. Included in his deductions shown on his financial affidavit is a weekly payment for his retirement (401K) plan of $285.88. The maximum that he is allowed to contribute to that plan is $9500. Although the maximum allowed 401K payment for which he can take an income tax deduction is $9500, the plaintiff contributes more than that amount to his 401K plan. That plan is a voluntary plan and the court is disallowing the full amount of that weekly deduction. The commissions that he receives come from the following two sources: (a) his own sales for which he receives approximately 1 percent of his gross sales; and (b) sales from his staff from which he receives approximately one-half of 1 percent of the gross sales. The commissions are paid monthly based on billings. His gross weekly income from interest and dividends is approximately $143. Plaintiff's exhibit four is the statement of the defendant's income for the period of January 1, 1997 through May 14, 1997. His gross regular pay for the period ending May 14, 1997, is $44,686. He shows commissions of $25,282.32 and a retroactive pay of $476. Included in the $25,282.32 commission is $10,000 of commissions that he had earned in 1996, and deferred to 1997. The defendant's current CT Page 11092 base annual income is $106,184. That amounts to $2042 gross weekly and the court is using that amount rather than the amount shown on his financial affidavit of $1980.77 gross weekly. The $10,000 that was deferred from 1996, has not been included by the defendant in his current financial affidavit. The parties are in dispute as to whether that income should be considered by the court. The court finds that for the purpose of this motion that the $10,000 of income that was deferred from 1996, should not be considered by the court and, therefore, is not considering it in determining the defendant's present net weekly income. The parties are also in dispute as to how to determine the defendant's current commissions. The court is calculating his commissions by excluding the $10,000 carryover that he had from 1996, thereby reducing his commissions for the period ending May 14, 1997, to $15,282.32. The court finds that for the period of May 14, 1997 through June of 1997, he had an additional approximate $5000 in commissions. He had an additional approximate $2700 in commissions for the month of July, 1997, and an additional approximate $2700 in commissions for the month of August, 1997, for a total commission as of August 31, 1997, of $25,682. This amounts to an average gross weekly commission of approximately $734, which the court is using in determining the defendant's current net weekly income. The court, therefore, finds that the defendant's combined gross weekly income from his base pay of $2042 plus commissions of $734 is $2776. The court is deducting from that amount the following weekly amounts: (a) FICA-OASDI — $78; (b) FICA-HI — $45; (c) Federal income tax — $375; (d) New York State income tax — $11; (e) New York City income tax — $6; and (f) Connecticut income tax — $60. The total weekly deductions amount to $575. The defendant's net weekly income from his base pay and his commissions is $2201. He has an additional net weekly income from interest/dividends of $100.60 for a total net weekly income of $2301.60.
The defendant owns a home in Wilton, Connecticut with a fair market value of $203,000. It has a mortgage of $103,000 and an equity of $100,000. This property is in the defendant's name and that of his fiancee. It was purchased in 1996. The defendant sold a home that he owned in Norwalk and netted approximately $80,000 to $90,000 from that sale. He put approximately $100,000 into the Wilton, Connecticut purchase with his fiancee putting approximately $45,000 to $50,000 into that purchase. Under an agreement that he has with her in the event they were to split up, they would each get back the money that they paid towards the purchase of the real estate and then they would split the balance CT Page 11093 of the equity equally. His combined equity in the Wilton, Connecticut and Avalon, New Jersey properties is approximately $100,000.
The defendant owns a vacation home at Avalon, New Jersey with his fiancee. It has a total value of $250,000 and a total mortgage of $148,000. His one-half equity in that home is $51,000. This property is a beach home that was purchased in 1995, with his fiancee. The cost was approximately $238,000 to $240,000. Both parties signed the promissory note and mortgage deed which was in the original face amount of $138,000 to $140,000. He used equity from the prior family home that he had owned with the plaintiff to purchase the Avalon, New Jersey property.
The defendant owns stocks and mutual funds totalling $26,980; bonds totalling $1000; savings account with a balance of $3000; checking account with a balance of $3000; a 401K plan with a value of $72,690; an IRA with a value of $100,000; cash surrender value of life insurance of $20,000; motor vehicles worth $11,500; a boat worth $4500; and furniture and furnishings with a value of $10,000. He has a pension plan with an unknown value. The $72,690 that he has in his 401K plan is from his present employment. He started to contribute to that plan in November of 1992. Part of the $100,000 IRA that he has was from his divorce from the plaintiff. He presently contributes $2000 annually to that IRA. The $1000 he has in bonds was acquired since his divorce from the plaintiff. He has a USA/VISA liability of $9000 and Prudential Securities liability of $4000. His estimated legal expenses are $1500 for total liabilities of $14,500. The defendant is presently vested in his company's pension plan. He can start to receive his pension income at age sixty-five. He will receive one-half of 1 percent times the number of years he works times the average of his five highest years' gross income. He commenced employment with his present employer in November, 1991.
The plaintiff now has high blood pressure. She did not have it in 1992. She also has a thyroid problem that she also had in 1992. The plaintiff has a high school education.
The parties are in dispute as to the cause of the breakdown of the marriage. From the evidence presented the court finds that each party was equally at fault for the breakdown of the marriage. The defendant has a high school degree, as well as a four-year college degree with a B.S. in marketing. He presently CT Page 11094 suffers from high blood pressure and high cholesterol. He also has sleep apnea.
The threshold question before the court is whether there has been a substantial change in the financial circumstances of one of the parties from the date of dissolution to the present time. The court finds that as a result of the increase in the defendant's net weekly income from $1390.51 to $2301.60 that there has been a substantial change in his financial circumstances. "In general the same sorts of criteria are relevant in deciding whether the decree may be modified as are relevant in making the initial award of alimony. They have chiefly to do with the needs and financial resources of the parties. . . . [T]hese criteria [are] outlined in General Statutes § 46b-82." (Citations omitted; internal quotation marks omitted; brackets omitted.) Borkowski v. Borkowski,228 Conn. 729, 736 (1994). The court has considered all of the statutory criteria of § 46b-82 of the Connecticut General Statutes regarding the issue of modification of alimony.
The plaintiff has incurred counsel fees as a result of the bringing of this motion to modify totalling $4000. The court finds that the amount of that counsel fee is reasonable. The parties are in dispute as to whether the defendant should pay any amount of that counsel fee. In determining whether to require the defendant to pay any part of the plaintiff's attorney's fees, the court has considered the total financial resources of the parties in light of the statutory criteria of §§ 46b-62 and 46b-82.
ORDERS
1. The court increases weekly alimony from $375 weekly to $575 weekly.
2. The court further orders that for so long as there is an existing obligation to pay alimony that the parties are to exchange copies of their federal and state income tax returns within thirty days after such returns have been filed by certified mail, return receipt or registered mail, return receipt.
3. No counsel fees are awarded in favor of either party.
Axelrod, J. CT Page 11095