[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM OF DECISION RE: MOTION FOR MODIFICATION (DOCKET ENTRY NO. 183)
CT Page 9461
The defendant has moved for modification of the child support and alimony award entered on February 20, 1998, before the Honorable Elaine Gordon at the Regional Family Trial Docket at Middletown. Judge Gordon found that the defendant had an annual earning capacity of between $70,000 and $80,000 and ordered child support for the two minor children of $265 per week and alimony in the amount of $235 per week to terminate upon the earliest to occur of the following events: the plaintiff's remarriage, the plaintiff's "cohabitation in a manner that triggers the effect of Connecticut General Statutes § 46b-86 (b) or January 30, 2008." The defendant alleges a substantial change in circumstances in that he has lost his job and is not earning an income.
At the time of the judgment, the defendant was self-employed as a consultant with one client, a printing business owned by his mother. Prior to his employment as a consultant, he had been president of the company but was replaced by his younger brother. Since that time, he was terminated in his consultant position in October, 1998, but paid by Jupiter Communications Corporation until December 31, 1998. Effective on that date the defendant's brother bought the assets of Jupiter Communications Corporation from his mother and started a new business, Jupiter Communications, LLC. His mother has now contracted to sell the building to others in September of this year.
At the end of 1998 and beginning of 1999, the defendant took a course in the Principles and Practices of Real Estate and has taken the examination for his real estate sales person's license. He passed the examination and is now a real estate sales person with Coldwell Banker. As a real estate sales person, he earns commissions only. He has earned "a little over" $2,000 in commissions so far in 1999 and anticipates earning $20,000 by the end of the year. He underwent an intensive training program in May so there were no sales in May. He has had four commissions, two sales and two rentals, a fifth transaction fell through. The manager of his office has testified that the defendant is articulate, dedicated and focused and has evidenced the skills that all the successful real estate agents have. The manager also testified that it takes a full year to get started in the business.
Judge Gordon, at the time judgment was entered in this matter, made the following findings: CT Page 9462
 "The defendant represents to the court that he is a self-employed consultant who consults exclusively for a printing business owned by his mother. Previous to his employment as a consultant he was the president of this company. The defendant testified that, during the dissolution proceedings, he left his job because he felt unhappy and unfulfilled. Ultimately, he wishes to be a wood worker, though he has undertaken no efforts to establish such a career.
 "There was much testimony about the declining fortunes of the company which the defendant used to head. The testimony was not convincing. While the business has had its ups and downs, the testimony makes clear that the defendant left his job voluntarily and to the financial detriment of his family. Indeed, the impression is left that, faced with the dissolution action, first the defendant lowered his income, and then he quit his job. Indeed, the consulting job performed by the defendant sounds suspiciously like the job he previously held, absent control and power. The defendant's earning capacity, based on his income and expenses at his former job, is between $70,000.00 and $80,000.00. Despite the ups and downs at his former business, that business has not substantially altered the benefits available to the family members who work there. There is no doubt that the defendant voluntarily left available and lucrative work."
It is the plaintiff's position that the defendant must prove that there has been a substantial change in the defendant's earning capacity. However, Judge Gordon's findings were based upon the defendant's employment as an employee of Jupiter Communications Corporation for twelve years and a consultant to that corporation for two years. He has had no other work experience. His degree from college in 1984 was in "general business, environment and policy." As Judge Gordon noted, "Indeed, the impression is left that, faced with the dissolution action, first the defendant lowered his income, and then he quit his job." Certainly, in view of the pending dissolution action, it appeared too coincidental. However, at this time, it is clear to this court that the defendant does not have the earning capacity now that Judge Gordon found at that time. Jupiter Communications LLC can no longer carry the defendant. The testimony has been that the defendant was no longer productive and that he appeared to be "burned out." CT Page 9463
The defendant himself testified that he needed to try to figure out what he would be good at doing and what he could do to earn the money that he needed to make. The testimony is that he has borrowed $15,000 from his mother, $9,000 from credit cards and $12,500 from his brother. He owes a total of $80,500 and, as his only asset, holds a note and mortgage deed for $32,500 awarded to him by Judge Gordon as his share of the marital home. He has assigned $11,028 of this interest plus ten percent interest pursuant to court order on December 17, 1998.
The law to be considered on a motion for modification has been stated as follows:
 "Trial courts have broad discretion in deciding motions for modification. Noce v. Noce, 181 Conn. 145, 149, 434 A.2d 345 (1980). Modification of alimony, after the date of a dissolution judgment is governed by General Statutes § 46b-86. Borkowski v. Borkowski, supra, 228 Conn. 734 (1994); Denley v. Denley, 38 Conn. App. 349, 350-51, 661 A.2d 628
(1995). When the disputed issue is alimony, the applicable provision of the statute is § 46b-86 (a), which provides that a final order for alimony (or child support] may be modified by the trial court upon a showing of a substantial change in the circumstances of either party. . . . Borkowski v. Borkowski, supra, 734. The party seeking modification bears the burden of showing the existence of a substantial change in the circumstances. Jaser v. Jaser, 37 Conn. App. 194, 204, 655 A.2d 790 (1995) The change may be in the circumstances of either party. McCann v. McCann, 191 Conn. 447, 450, 464 A.2d 825 (1983); see General Statutes § 46b-86. The date of the most recent prior proceeding in which an alimony order was entered is the appropriate date to use in determining whether a significant change in circumstances warrants a modification of an alimony award. See Avella v. Avella, 39 Conn. App. 669, 672, 666 A.2d 822 (1995); see also Borkowski v. Borkowski, supra, 737-38.
"In general the same sorts of (criteria] are relevant in deciding whether the decree may be modified as are relevant in making the initial award of alimony. More specifically, these criteria, outlined in General Statutes § 46b-82 . . . require the court to consider the needs and financial resources of each of the parties . . . as well as such factors as the causes for the dissolution of the marriage and CT Page 9464 the age, health, station, occupation, employability and amount and sources of income of the parties. . . . Id., 736.
 "When presented with a motion for modification, a court must first determine whether there has been a substantial change in the financial circumstances of one or both of the parties. Id., 737. Second, if the court finds a substantial change in circumstances, it may properly consider the motion and, on the basis of the § 46b-82 criteria, make an order for modification. Id. The court has the authority to issue a modification only if it conforms the order to the distinct and definite changes in the circumstances of the parties. Id., 738. The inquiry, then, is limited to a comparison between the current conditions and the last court order. Id.' (Internal quotation marks omitted.) Crowley v. Crowley, 46 Conn. App. 87, 90-92, 699 A.2d 1029 (1997)." Shearn v. Shearn, 50 Conn. App. 225, 227-229 (1998)
The court finds there has been a substantial change in the circumstances of the parties. Having so found, the court must consider the criteria of § 46b-82 on the issue of alimony, the provisions of § 46b-84 and § 46b-215 on the issue of support and the provisions of § 46b-62 with regard to counsel fees.
The parties were married on April 28, 1990. There are two minor children: Jessica, born May 13, 1992, and Riana, born January 25, 1994, thus seven and five. Jessica will be entering the second grade and Riana will enter kindergarten in the fall.
The plaintiff is a legal secretary for the firm of Cousins and Johnson. She works part time and mostly at home. Her financial affidavit shows weekly earnings of $427.00 and a net after federal, state, social security and Medicare taxes of $332.00. It is apparent that Judge Gordon based her support order on a weekly gross income for the defendant of $1,350 and a net of $875.00 for a total net weekly support of $1200 with a figure from the guidelines of $362.00 per week of which $265.00 was the defendant's share.
The defendant is living with his brother in a house owned by his brother in Milford. He pays rent to his brother but has been unable to pay any rent since April of this year. He has been unable to pay alimony, also, since mid April. His financial affidavit has no amount for household expenses except for business telephone. He pays $76.00 per week for medical/hospital CT Page 9465 insurance and $63.00 per week on a car loan for a 1982 Honda and a 1997 Saturn. His financial affidavit reflects a $900.00 loan balance on the Saturn. This is clearly a typographical error. The amount should be $9,000 since the affidavit shows a negative equity of $500.00. Total weekly expenses excluding alimony and support amount to $308.00.
Alimony as ordered by Judge Gordon terminates upon the death of either party, the plaintiff's remarriage, cohabitation that triggers the effect of General Statutes § 46b-86 (b) or January 30, 2008 thus ten years of alimony. The defendant, in response to a question from plaintiff's counsel, stated that he was looking for relief from the court order so that he could get himself established in his new profession, relief that the palimony be reduced temporarily, but child support remain the same.
If this be the case, support would continue based upon the defendant's earning capacity of $70,000 per year. Based upon an annual income of $20,000, support, considering the parties' net incomes to be $330.00 and $400.00 net respectively, would be $268.00 per week for two children and $147.00 per week as the defendant's share. The court in making an order of support in the amount of $265.00 per week deviates from the support guidelines pursuant to § 46b-215a-3 (b)(B), the defendant's earning capacity.
To determine any modification of alimony the court must consider all of the indicia of § 46b-82 of the General Statutes which includes the cause for the dissolution. Judge Gordon's finding in this regard is stated as follows:
 "The parties each recite different reasons for the breakdown of the marriage. The court does not attribute the breakdown of the marriage to one party over the other."
Key in the determination of a proper amount of alimony is the needs of the parties. The plaintiff has a substantial expense for the mortgage on the home. Her monthly mortgage payment is $1664 per month or $387.00 per week. It is this expense that will be impossible to maintain on the present fiscal situation.
Until mid April, the defendant was current in his alimony. Until that time, the defendant had paid the present orders by borrowing and by selling furniture that he had made. He is a fine woodworker and his pieces have been in demand by relatives and CT Page 9466 close friends. It will be possible for him to earn some money from the sale of this furniture, but his full working time and more will have to be devoted to building up his real estate clientele.
Finally, a consideration on the issue of alimony is the health of both of the parties. The plaintiff has testified that she sustained a neck injury two years ago and that she has had migraine headaches this past year. There was no further evidence on either of these complaints and they do not appear to have affected the plaintiff's work ability.
Having considered all of the factors of § 46b-82 of the General Statutes, the court orders that periodic alimony to be paid by the defendant to the plaintiff shall be suspended for a period of one year from April 15, 1999 to June 30, 2000. Since the motion was served upon the plaintiff on March 22, 1999, such an order of suspension may be effective any date thereafter. Since alimony was paid to mid April, the court's order shall be effective April 15, 1999. Since alimony is suspended for one year from April 15, 1999 to June 30, 2000, the period that alimony shall be paid shall be extended to April 15, 2009.
Defendant's motion, therefore, shall be denied in its prayer for relief regarding support for the minor children and shall be granted regarding alimony, ordering that alimony shall be suspended from April 15, 1999 to June 30, 2000, the alimony period also to be modified to provide for the period of payment to continue to the earliest to occur of the following events: the death of either of the parties, the plaintiff's remarriage, her General Statutes § 46b-86 (b) or April 15, 2009. Alimony in the amount of $235.00 per week shall resume July 1, 2000.
Edgar W. Bassick, III, Judge Trial Referee