[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM OF DECISION
RE: PLAINTIFF'S MOTION FOR CONTEMPT CODED 191 AND PLAINTIFF'S MOTION FOR MODIFICATION CODED 192
Many of the facts that give rise to the above two motions are not in dispute. A judgment of dissolution was rendered in the above entitled matter by Memorandum of Decision dated December 13, 1995. The Memorandum of Decision provided in part as follows: CT Page 3894
 1. The parties own real property known as 17 Hawthorne Cove in Brookfield, Connecticut. The husband is ordered to bring the People's Bank mortgage, town taxes, homeowners insurance premiums and electric power bill current within sixty (60) days. The Defendant was further ordered to quitclaim to the Plaintiff his interest in the property and hold the Plaintiff harmless from all liens on said property, except the People's Bank mortgage and town taxes, which the Plaintiff was to pay as the future payments came due and the Plaintiff was to hold the Defendant harmless from the mortgage and town taxes.
 2. The Plaintiff was to transfer to the Defendant her ownership of fifty (50) shares of Kitchens by Benson within sixty (60) days. The Defendant was to hold the Plaintiff harmless from all obligations of the business and was further to pay to the Plaintiff the sum of $5,000.00 per year for six (60) years beginning one (1) year from date hereof, without interest, if payments were punctually made, otherwise, the entire unpaid remaining balance of payments was to earn interest at the rate of eight percent (8%) per annum until the delinquency was cured and the earned interest paid.
 3. The Court ordered support payments for the minor children by the Defendant to the Plaintiff in the amount of $375.00 per week and the Court ordered the Defendant to pay the Plaintiff as alimony the sum of $175.00 per week for six (6) years. All unreimbursed medical expenses were to be paid by the husband until the wife's alimony terminates, after which all unreimbursed medical expenses were to be split equally.
4. The Defendant was to maintain life insurance in the amount of $125,000.00 naming the Plaintiff as irrevocable beneficiary as trustee for the minor children until the child support CT Page 3895 terminated.
 5. The Defendant was to pay within six (6) months the sum of $2,000.00 to the Plaintiff towards her attorney's fees.
On April 8, 1996, an order was entered for the defendant to pay to the plaintiff $3000 counsel fees for an appeal, one-half payable within thirty days and the other half within sixty days. The defendant was found to be in contempt of court and an arrearage on child support and alimony was found in the total amount of $6225. It was further found that the medical bills for the minor child were in arrears and that the mortgage payments were not current. The court further awarded the plaintiff $250 in counsel fees to be paid within sixty days. The arrearage was ordered to be paid at rate of $80 per week, in addition to the existing alimony and support order of $550 per week, and the mortgage was ordered to be brought current forthwith. On June 10, 1997, the magistrate modified the court's order with regard to alimony and support and set new orders as follows: child support in the amount of $225 per week, and alimony in the amount of $50. There was also a finding that there was an outstanding arrearage in the amount of $14,935 as of June 3, 1997. The magistrate found that the plaintiffs gross weekly income was $365, and her net weekly income was $287. The magistrate further found that the defendant's gross weekly income was $884, and his net weekly income was $634.
The plaintiffs motion for contempt coded 191 raises the following claims:
1. THE PLAINTIFF'S CLAIM THAT THE DEFENDANT DID NOT PAY ANY OF THE OBLIGATIONS WITH REGARD TO THE REAL ESTATE, AND AS A RESULT OF HIS FAILURE TO PAY, THE PROPERTY WAS FORECLOSED AND THE PLAINTIFF LOST SAID PROPERTY.
The court enters the following findings.
The defendant, in violation of the court order, failed to bring the mortgage payments current on the family residence located at 17 Hawthorne Cove, Danbury, Connecticut, as a result of which a foreclosure action was brought by the People's Bank. The plaintiff learned of the foreclosure action as a result of a letter sent to her dated January 16, 1996 from People's Bank informing her that there was a total arrearage due of $6852.25. The plaintiff was unable to afford to bring the mortgage payments CT Page 3896 current as a result of the defendant's failure to keep current his alimony and support payments. In January of 1996, the defendant was paying to the plaintiff between $240 and $290 weekly against a total weekly order of $550 of alimony and support. On October 8, 1996, an order of strict foreclosure was entered. The property was found to have a total fair market value of $170,000. The debt was found to be $171,648.80, plus interest of $12,444.55, plus late charge of $684.15, plus a tax escrow of $4070.06 and NSF of $17.50, for a total of $188,865.06. Appraisal fees were set in the amount of $450, attorney's fees of $2092.50, and title search fee of $150, with a law day set of January 7, 1997. Title vested in the bank as of January 8, 1997. As of February 1, 1996, there was a prior previous balance due on the mortgage of $6884.50, with a current amount due of $1537.65, for a total amount due of $8422.15. The plaintiff filed for bankruptcy and received her discharge in bankruptcy on July 22, 1997 which discharged her from any liability under the mortgage for any deficiency judgment. A deficiency judgment on the mortgage foreclosure was entered on December 3, 1997 in the amount of $31,693.30 against the defendant.
The court finds that the defendant's failure to bring the People's Bank mortgage current within sixty days as ordered, and his failure to keep his alimony and mortgage payments current, has caused the property to be foreclosed. The deficiency judgment against him in the amount of $31,693.30 is as a direct result of his failure to bring the mortgage payments current and his failure to keep current on his alimony and support payments, and he therefore cannot use that deficiency as a setoff against moneys that he owes to the plaintiff under the court judgment. The Memorandum of Decision found the fair market value of the property to be between $180,000 to $200,000, and that it was subject to a first mortgage to People's Bankwith a balance of $172,000. The trial court was therefore awarding to the plaintiff an equity in the family home of between $8000 and $18,000. For the purpose of this contempt motion, the court is setting that equity at $8000 in order to enforce the integrity of the court judgment. See Clement v. Clement, 31 Conn. App. 641 (1994). The burden of proving inability to pay rests upon the obligor, and the defendant has failed to meet that burden of proof regarding his failure to bring the mortgage payments current, and his failure to keep current on his alimony and support orders.
The judgment also required the defendant to bring current within sixty days the electric power bill. The defendant now CT Page 3897 claims that there was no electric power bill that was owed at the time of dissolution. The court finds from the evidence presented that there was an electric power bill owed at the time of dissolution in the amount of $1700, and that the defendant has failed to pay any of that amount, for which the court finds the defendant in contempt of court.
2. THE PLAINTIFF'S CLAIM THAT THE DEFENDANT NEVER PAID THE PLAINTIFF FOR HER INTEREST IN KITCHENS BY BENSON, SO THAT IN ADDITION TO THE $30,000.00, WHICH IS STILL DUE AND OWING, INTEREST HAS BEEN ACCUMULATING ON SAID DEBT, IN ACCORDANCE WITH THE TERMS OF THE JUDGMENT. PLAINTIFF BELIEVES THAT TOTAL AMOUNT NOW DUE, INCLUDING INTEREST THROUGH SEPTEMBER 13, 1999, IS IN THE AMOUNT OF $38,600.00.
The court finds that the defendant did not pay to the plaintiff the $5000 payment that was due on December 13, 1996 for her shares of stock in Kitchens by Benson, and further failed to pay her the $5000 that was due on December 13, 1997. The only amounts paid by him on that $30,000 obligation was $1100 that was paid by money order in August or September of 1997. Under the terms of the judgment, the entire unpaid remaining balance of payments was to earn interest at the rate of 8 percent per annum until the delinquency was cured and the earned interest paid. Interest therefore is running as of December 13, 1996 at the rate of 8 percent per annum on the entire unpaid balance of $30,000. That amounts to $2400 per year or $200 per month. The court has applied the $1100 payment by the defendant in August or September of 1997 to the interest that accumulated on the $30,000 unpaid balance. The interest from December 13, 1996 to December 13, 1997 is $2400. The interest from December 13, 1997 to December 13, 1998 is $2400. The interest from December 13, 1998 to December 13, 1999 is $2400. The total interest is therefore $7200 less the $1100 that was paid for an unpaid interest amount of $6100. The total amount owed to date on the $30,000 obligation is for the $5000 due December 13, 1996; the $5000 due December 13, 1997; the $5000 due the December 13, 1998; and the $5000 due December 13, 1999, for a total of $20,000, plus $6100 interest, for a total of $26,100 for which the court finds the defendant in contempt of court.
The defendant inherited $24,000 from his grandmother's estate. He received the funds sometime around August, 1997. He used the funds to buy a home with his current wife rather than using the funds to meet his court ordered obligations under the dissolution CT Page 3898 decree, including the payment to the plaintiff of $5000 annually for her shares of stock. He also used $7000 since the date of dissolution to purchase two "wave runners." He currently has $12,000 representing one-half of $24,000 in stocks and bonds, and $7000 in an IRA.
 THE PLAINTIFF'S CLAIM REGARDING THE DEFENDANT'S FAILURE TO PAY COUNSEL FEES
The court finds that the counsel fees previously ordered of $2000, plus $3000, plus $250, totaling $5250, has not been paid for which the court finds the defendant in contempt of court. The defendant's claim that he made a payment of $2450 towards counsel fees is not credible.
THE PLAINTIFF'S CLAIM REGARDING THE IRS LIEN
The court order entered on December 13, 1995 was for each party to pay the liabilities listed on their financial affidavits dated August 16, 1995, and hold the other party harmless for said liabilities. The defendant's financial affidavit listed a liability to the IRS in the amount of $21,000. The court finds that the plaintiff has paid $2478 towards that liability for which she was supposed to be held harmless by the defendant for which the court finds the defendant in contempt of court.
The court enters the following orders regarding the plaintiffs motion for contempt coded 191.
1. Additional counsel fees is awarded to counsel for the plaintiff in the amount of $7500, which includes costs of $697.50.
2. The defendant is ordered to liquidate within thirty days his one-half interest in stocks and bonds with Janney Montgomery and Scot in the amount of $12,000, and his IRA in the amount of $7000. Those funds are to be paid over to the plaintiff within thirty days and are to be applied as follows: (a) $8000 for her loss of equity in the family residence; (b) $1700 for the electric bill; (c) $2478 for IRS taxes paid by the plaintiff; (d) the balance is to be applied to the unpaid attorney's fees awarded to the plaintiff.
3. All remaining unpaid balances as a result of these orders, as well as a result of the orders entered on the plaintiffs CT Page 3899 motion to modify, are to include interest at the rate of 8 percent per annum effective the date this decision is filed.
4. Any future payments made on the arrearages are first to be applied in the following order: (a) the remaining balance due on attorney's fees; (b) interest due on the stock buy-out; (c) interest due on support arrearage; (d) interest due on alimony arrearage; (e) principal balance due on the stock buy-out; (f) principal due on support; (g) principal due on alimony arrearage.
 II PLAINTIFF'S MOTION TO MODIFY CODED 192
The plaintiffs motion to modify alleges that there has been a substantial change in financial circumstances both with regard to the plaintiffs and defendant's income since the magistrate's order of June 10, 1997.
The court finds the following additional facts:
The defendant has submitted a financial affidavit dated October 8, 1999 claiming that his gross weekly income from his employment at Kitchens by Benson is $1000. The court finds the following additional facts regarding this claim. The defendant has since remarried. His current wife is also employed by Kitchens by Benson, Inc. and receives a gross weekly income of $2000. The defendant justifies this difference in income by claiming that he has medical problems that do not allow him to devote full-time to his business.
The court is not persuaded by the defendant's claim that because of medical reasons he is unable to work full-time at his business for the following two reasons: First, as stated inBorkowski v. Borkowski, 228 Conn. 729, 738-39 (1994):
Applicable to dissolution actions, as well as to other kinds of litigation, is the principle that an adjudication by a court having jurisdiction of the subject matter and the parties is final and conclusive not only as to matters actually determined, but as to matters which the parties might have litigated as incident thereto and coming within the legitimate purview of the subject matter of the action. This policy of avoiding duplicitous litigation is particularly important in the context of family law where courts should welcome the CT Page 3900 opportunity to ease the burden of post-divorce litigation over enforcement or modification of alimony claims. . . . A court, having performed its function of ruling upon a controversy, cannot be taken over by the litigants for the continued readjudication and reconsideration of their affairs. To allow otherwise would waste time and leave an undesirable uncertainty in the economic affairs of the parties. [Citations omitted; internal quotation marks omitted; emphasis provided.]
The medical problems in question are no different than what existed at the time of dissolution. The Memorandum of Decision at the time of dissolution dated December 13, 1995 stated in part as follows:
 The husband is forty (40) years of age and claims to have had two heart attacks in November, 1994. No medical evidence of the nature or severity of this claimed condition was offered by either party. The husband appears robust and describes a life style that does not seem to be limited by physical problems.
Secondly, the court does not find the defendant's testimony credible that he in fact does have any type of heart condition or other physical problem that would prevent him from devoting full-time to his business. The court finds that the defendant is paying to his current wife $2000 weekly and only paying to himself $1000, that the defendant has voluntarily reduced his income, and the court is therefore setting the defendant's income of a gross of $2000 weekly. The court therefore finds that there has been a substantial change in circumstances since the date of the magistrate's order in that the defendant's gross weekly income has increased from $884 weekly, with a net of $634 weekly, to a gross of $2000 weekly, and a net weekly income of $1345. The court finds that the plaintiffs' gross weekly income is now $350, and net weekly income of $263, as compared to her gross weekly income at the time of the hearing before the magistrate on June 4, 1997 of $365, and a net of $287 weekly. The court does not find the reduction in the plaintiffs income to be a substantial change in circumstances.
Once the court has found a substantial change in circumstances, the court then considers the same general criteria in deciding what amount to modify the orders that are considered at the time the orders are initially entered insofar as alimony is concerned. Under the child support guidelines, the amount of support that CT Page 3901 the defendant should be paying to the plaintiff is $419 weekly, based on the defendant having a gross weekly income of $2000, and a net weekly income of $1345, and the plaintiff having a net weekly income of $263. Further, he should be paying 58 percent of unreimbursed medical, and she should pay 42 percent of unreimbursed medical. The court enters the following orders:
1. The court increases the support order from $325 weekly to $419 weekly retroactive to August 10, 1999, which is the date the motion to modify was served in-hand on the defendant. Any arrearage created by this retroactive order is to be paid at the rate of $80 weekly.
2. The court increases the alimony order from $50 per week to $180 per week retroactive to August 30, 1999, which is the date the motion to modify was served in-hand upon the defendant. Any arrearage created by this retroactive order is to be paid at the rate of $35 weekly, commencing when the support arrearage has been paid in full in accordance with this order.
3. The court modifies the present order regarding unreimbursed medical expenses, and orders that the defendant's share of unreimbursed medical expenses be 58 percent for the children retroactive to August 30, 1999. In the event there has been any overpayment by the defendant as a result of this retroactive order, then the overpayment is to be applied towards the support arrearage.
4. An automatic wage execution is authorized.
5. Any alimony and support arrearages that were due at the commencement of this hearing were due to the State of Connecticut, and the court therefore makes no finding thereon.
Axelrod, J.